IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| EDWARD BISSAU MENDY, | ) |
| Plaintiff, | ) |
| v. | ) NO. 3:23-cv-00594 |
| JIMMY LEE ADAMS, et al., | ) JUDGE RICHARDSON |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

Plaintiff Edward Mendy, who does not reside in Tennessee,[1] is proceeding pro se in this Court upon a "Complaint" and "Petition for Damages" which is also styled an "Application for Temporary Restraining Order, Application for a Preliminary Injunction, Application for Permanent Injunction, and Petition for Accounting." (Doc. No. 1 (hereinafter, "the Complaint").) Plaintiff has also filed an application to proceed as a pauper. (Doc. No. 2.)

**I. APPLICATION TO PROCEED AS A PAUPER**

The Court may authorize a person to file a civil suit without paying the $402 filing fee. 28 U.S.C. § 1915(a). According to his application, Plaintiff received an average of $3,000 per month in income during the previous twelve months—$1,000 from self-employment and $2,000 in gifts. (Doc. No. 2 at 1.) He reports that he expects to earn $2,000 in employment income next month, but no gifts. (*Id.*) He also reports that, as a result of the recent investment losses that underlie the claims of this lawsuit (reported as a $38,000 debt allegedly owed him by his business partner, Defendant Jimmy Adams (*id.* at 3)), he became impoverished "and unable to secure employment"

---

[1] Plaintiff allegedly has "his principal place of residence" in Morris County, New Jersey (Doc. No. 1 at 1), though his address of record is in New Orleans, Louisiana. (*See id.* at 27.)

(*id.* at 5), with less than $400 currently held in cash or on account and ordinary monthly expenses (including what appears to be a $500 monthly child support obligation). (*Id.* at 2–4.) He does not report any spousal income or expenses but clarifies that he is "supported by his wife" under a "separate community regime."[2] (*Id.* at 5.) His report of "[a]ssets owned by you or your spouse" includes $330,000 worth of real estate that is not his home, two cars worth a combined $9,000, and $10,000 in "other assets." (*Id.* at 3.)

Resolving the application's minor ambiguities in Plaintiff's favor, the Court finds that although he reports significant marital assets, those assets are not liquid and may belong separately to his wife (rather than being held in common with Plaintiff) under Louisiana law. Though there is some discrepancy in Plaintiff's expectation of employment income and his asserted inability to secure employment, his low liquid assets combined with his expenses and the sudden losses he asserts in this lawsuit demonstrate that he cannot pay the civil filing fee in advance without undue hardship. Accordingly, Plaintiff's application to proceed as a pauper (Doc. No. 2) is **GRANTED**.

## II. REQUEST FOR A TEMPORARY RESTRAINING ORDER

The Complaint is concerned with the operation of Country Box, LLC, a joint venture in the business of promoting boxing events with a country music component, which Plaintiff entered into with Defendant Jimmy Adams, and which Adams has allegedly fraudulently commandeered in violation of the agreement between the two owners. The Complaint is styled as, among other things, an application for a temporary restraining order (TRO), a preliminary injunction, and a permanent injunction. (Doc. No. 1 at 1.) In its request for relief, the Complaint states that "[a] TRO

---

[2] The Court takes judicial notice of Louisiana's spousal property laws, which recognize a distinction between marital property held in "community" by the spouses and marital property separately held by one of the spouses (subject to that spouse's ability to transfer separate marital property to the spousal community). La. Civ. Code Ann. art. 2335, art. 2341.1.

or Preliminary Injunction is necessary to ensure that the brand is not destroyed . . . and that Adams does not sell the Company[.]" (*Id.* at 23.)

Those seeking a TRO or preliminary injunction under Federal Rule of Civil Procedure 65 must meet four requirements.[3] They must show a likelihood of success on the merits; irreparable harm in the absence of the injunction; that the balance of equities favors them; and that public interest favors an injunction. *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008); *Sisters for Life, Inc. v. Louisville-Jefferson County*, 56 F.4th 400, 403 (6th Cir. 2022). Plaintiffs seeking a preliminary injunction may not merely rely on unsupported allegations, but rather must come forward with more than "scant evidence" to substantiate their allegations. *See, e.g.*, *Libertarian Party of Ohio v. Husted*, 751 F.3d 403, 417 (6th Cir. 2014); *Cameron v. Bouchard*, 815 F. App'x 978, 986 (6th Cir. 2020) (vacating preliminary injunction when plaintiffs made no evidentiary showing on some elements of their claim, but instead made mere allegations regarding the treatment of Covid-19 in prisons); *McNeilly v. Land*, 684 F.3d 611, 614 (6th Cir. 2012) (upholding denial of preliminary injunction when plaintiff made only a "small showing" of evidence); *United States v. Certain Land Situated in City of Detroit*, No. 95-1118, 1996 WL 26915, *1 n.1 (6th Cir. Jan. 23, 1996) (noting a lack of evidence to support speculative allegations); *Boulding v. Corr. Med. Servs.*, No. 1:06-CV-811, 2008 WL 2095390, at *1 (W.D. Mich. Feb. 11, 2008), *report and recommendation adopted*, No. 1:06-CV-811, 2008 WL 2095387 (W.D. Mich. May 15, 2008)

---

[3] Some published Sixth Circuit cased stands unmistakably for the proposition that these four items are *factors* rather than *requirements,* except that irreparable harm is a requirement (and, if it exists and thus keeps the possibility of a TRO alive, thereafter becomes a factor to be balanced along with the other three factors). *See, e.g.*, *D.T. v. Sumner Cnty. Sch.*, 942 F.3d 324, 326–27 (6th Cir. 2019). Alas, this case law is inconsistent with more recent Sixth Circuit case law and with Supreme Court case law (including the two cases cited above) describing these as all being requirements. The Court believes that it is constrained the follow the latter line of cases.

("Plaintiff did not marshal any evidence in support of his motion [for a preliminary injunction]. Plaintiff's unsupported allegations do not suffice." (citations omitted)).

"The merits on which plaintiff must show a likelihood of success encompass not only substantive theories but also establishment of jurisdiction." *Church v. Biden*, 573 F. Supp. 3d 118, 133 (D.D.C. 2021) (quoting *Elec. Priv. Info. Ctr. v. Dep't of Com.*, 928 F.3d 95, 104 (D.C. Cir. 2019)). As discussed in the following section of this Order, Plaintiff has not yet demonstrated a likelihood of establishing that subject-matter jurisdiction is proper in this Court.

Before the Court may properly even consider the above requirements, however, a TRO movant must by rule comply with specific procedural requirements. First, "[a]ny request" for a TRO "must be made by written motion separate from the complaint commencing the case." M.D. Tenn. L.R. 65.01(a). Second, in accord with the fact that the movant bears the burden of justifying preliminary injunctive relief, *Kentucky v. U.S. ex rel. Hagel*, 759 F.3d 588, 600 (6th Cir. 2014), a TRO motion must be accompanied by a memorandum of law. M.D. Tenn. L.R. 65.01(b). Third, the motion for a TRO must be supported, at a minimum, by "an affidavit or a verified complaint." Fed. R. Civ. P. 65(b)(1)(A); *see also* M.D. Tenn. L.R. 65.01(b) (explaining that a motion for a TRO "must be accompanied by a separately filed affidavit or verified written complaint"). Finally, the moving party must certify in writing "any efforts made to give notice and why it should not be required." Fed. R. Civ. P. 65(b)(1)(B). These requirements apply to Plaintiff here even though he is proceeding pro se. *See* M.D. Tenn. L.R. 65.01(c) (requiring "strict compliance" with this notice provision by pro se moving parties).

Here, Plaintiff has failed to fulfill these procedural requirements. He has not filed a separate motion for a TRO, but rather has merely included a request for injunctive relief as part of the Complaint. He has not submitted a memorandum of law or supporting documentation of any kind

concerning the contract Defendant Adams allegedly breached. (*See* Doc. No. 1 at 13–15.) His Complaint is not verified, nor has he submitted a separate, sworn affidavit in support of his request for a TRO. Finally, he has not explained in writing what particular efforts he made to give notice to Defendants or why notice should not be required. Accordingly, the Court must **DENY** without prejudice Plaintiff's request for a TRO.

The Court's ruling does not preclude Plaintiff from filing a properly supported, procedurally compliant motion under Federal Rule of Civil Procedure 65. But first he must address the Court's jurisdiction to hear this case.

### III. SUBJECT-MATTER JURISDICTION

The Complaint does not clearly establish that jurisdiction in this Court is proper. *See Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009) (recognizing that federal courts must be assured of their subject-matter jurisdiction "and may raise the issue sua sponte"). "[F]ederal courts are courts of limited jurisdiction and have an independent duty to determine whether they have jurisdiction in cases before them and to 'police the boundaries of their own jurisdiction.'" *Davis v. Sessions*, No. 1:17CV1354, 2017 WL 4810620, at *2 (N.D. Ohio Oct. 25, 2017) (quoting *Douglas v. E.G. Baldwin & Assoc. Inc.*, 150 F.3d 604, 606 (6th Cir. 1998), *overruled on other grounds by Cobb v. Contract Transp., Inc.*, 452 F.3d 543, 549 (6th Cir. 2006)); *see also Akno 1010 Mkt. St. St. Louis Missouri LLC v. Pourtaghi*, 43 F.4th 624, 627 (6th Cir. 2022) (directing district courts to "assure themselves of subject-matter jurisdiction at the earliest possible moment to avoid wasting judicial and party resources").

The Complaint in this case does not contain a "statement of the grounds for the court's jurisdiction," as required by Federal Rule of Civil Procedure 8(a)(1). It asserts that venue is proper in this District because "all of the Defendants are domiciled" here. (Doc. No. 1 at 4.) While

Plaintiff's domicile is unclear, there is no reason to believe that he is domiciled in Tennessee. Aside from a few bare references to "federal law" (*id.* at 11, 14, 27), the Complaint predominantly invokes state law in asserting such causes of action as fraud, breach of contract, and unjust enrichment. It would therefore appear that the Complaint relies upon diversity-of-citizenship jurisdiction, a form of subject-matter jurisdiction that allows a federal court to entertain a complaint between citizens of different states where the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). Diversity jurisdiction exists only when "no plaintiff and no defendant are citizens of the same state." *Curry v. United States Bulk Transp., Inc.*, 462 F.3d 536, 540 (6th Cir. 2006) (citation omitted). The burden is on the party asserting diversity jurisdiction to "fully allege the citizenship of each party," and district courts "must hold litigants to this requirement." *Akno*, 43 F.4th at 627 (citing *Hertz Corp. v. Friend*, 559 U.S. 77, 96 (2010)).

The Complaint in this case does not establish complete diversity of citizenship. Citizenship for § 1332 purposes "is synonymous not with 'residence' but with 'domicile,'" *Kaiser v. Loomis*, 391 F.2d 1007, 1009 (6th Cir. 1968) (citations omitted), and domicile requires physical presence with a present intent to indefinitely remain. *Bateman v. E.I. DuPont De Nemours & Co.*, 7 F. Supp. 2d 910, 912 (E.D. Mich. 1998) (citation omitted). As previously mentioned, it is unclear where Plaintiff himself is domiciled, since he has a Louisiana address of record and a New Jersey "principal place of residence." (Doc. No. 1 at 1.) It is Plaintiff's responsibility to "fully allege the citizenship of each party," *Akno*, *supra*, starting with his own.

Moreover, regardless of where Plaintiff is domiciled, Defendant Country Box, LLC—the company Plaintiff co-owns—is domiciled there too. Although Country Box, LLC is alleged to be a "Missouri Limited Liability Company having its principal place of business . . . in this District, State of Tennessee" (Doc. No. 1 at 2), the state under whose laws an LLC is organized, or where

it maintains its principal place of business, is not the state where the LLC has citizenship. Rather, as unincorporated entities, "LLCs have the citizenships of their members and sub-members." *Akno*, 43 F.4th at 627. "Thus, when an LLC is a party in a diversity action, the court must know the citizenship of each member and sub-member." *Id.*; *see also Delay v. Rosenthal Collins Grp., LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009). Plaintiff alleges that he owns 50% of Country Box, LLC. (Doc. No. 1 at 10.) Therefore, he cannot establish diversity of citizenship with Country Box, LLC. *See Aquasea Grp., LLC v. Singletary*, No. 4:13-cv-2286, 2013 WL 5781192, at *1 (N.D. Ohio Oct. 25, 2013) ("If even one member or sub-member of an LLC is non-diverse, 'then complete diversity, and with it federal jurisdiction, would be destroyed.'") (quoting *Delay*, 585 F.3d at 1005)).

Nor has Plaintiff properly alleged the citizenship of the two other LLC Defendants—Jimmy Adams Media, LLC and Jimmy Adams Promotions, LLC—since he has failed to identify the domicile of all members and sub-members (if any) of those Defendants.

For these reasons, Plaintiff is **ORDERED TO SHOW CAUSE** why federal subject-matter jurisdiction exists over the Complaint. To do so, Plaintiff may submit either an Amended Complaint or a declaration that (1) contains a short and plain statement of the grounds for the Court's jurisdiction and (2) identifies his domicile and the domiciles of all members and sub-members (if any) of all LLC Defendants at the time this suit was filed. Plaintiff's response to this Order must be received by the Court within **30 DAYS** of the date this Order is entered on the docket. Failure to do so may result in dismissal of this action.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE